## State Highway Construction Contracts

Moss, Deputy Attorney General, June 30, 1932. — You have asked to be advised as to your duties as chief engineer, under your contract form No. 408 of April, 1930, in the matter of certifying completion of the contract for final settlement with the contractor under the following circumstances:

A contract was entered into for the construction of a road under which the contractor could use slag as a coarse aggregate in the concrete surface course. The source of supply from which the contractor procured the slag was approved by your department, and your inspector did not discover any defective material after inspection of the stock pile from which the contractor secured the slag. After approximately three thousand feet of road had been laid, certain

blow-ups were discovered, which, after inspection, were found to have been caused by pieces of flux stone which had been in the aggregate and had not been discovered either by your inspector or by the contractor. You state that there is no question about the good faith of the contractor or any of the inspectors of the department and that the presence of flux stone in slag is extremely difficult to detect.

Section seventy-eight of Contract No. 408 gives the specification for slag to be used in concrete surface course: "Crushed slag shall consist of clean, tough, durable pieces of air-cooled blast furnace slag, . . . free from . . . flux stone. . . ."

The defect in the work under the facts above stated was due to the failure of the material to comply with section seventy-eight of the specifications above quoted in that the slag used as the aggregate had some flux stone in it. Therefore, the only question involved is whether the contractor is relieved of responsibility under his contract because, first, he used due diligence and acted in good faith, and, secondly, because the source of material was approved and the material inspected by your department before its incorporation into the work.

The material portions of the contract which state the contractor's obligation are found on pages 26, 27, 28 and 29 of the contract, and read as follows:

". . . The contractor . . . covenants and agrees to furnish and deliver all the materials and to do and perform all the work and labor in the improvement of a certain section of highway. . . .

"The contractor further covenants and agrees that all of said work and labor shall be done and performed in the best and most workmanlike manner and that all and every of said materials and labor shall be in strict and entire conformity, in every respect, with the said specifications and drawings and shall be subject to the inspection and approval of the chief engineer of the Department of Highways. . . .

"The contractor further covenants and agrees that all and every of the said materials shall be furnished and delivered and all and every of the said labor shall be done and performed, in every respect to the satisfaction and approval of the chief engineer. . . .

"The contractor hereby further agrees . . . in all respects to complete said contract to the satisfaction of the said Secretary of Highways."

Section forty of the specifications provides, in part, as follows:

"The contractor shall be responsible for the entire work, in accordance with the specifications and contract, from the date of the execution of the contract until it is accepted by the final payment. . . ."

The phraseology of the contract in question above quoted is almost identical with the wording of the contract in the case of Com. ex rel. v. Nelson-Pedley Construction Co. et al., 303 Pa. 174 (1931). In our opinion, the decision in that case, namely, that the contractor was obligated to deliver to the Commonwealth completed work in accordance with his contract and specifications, controls this case. The court there said (page 178):

"Under this language, the contractor must complete the work in accordance with the plans and specifications, to the satisfaction and acceptance of the department, for this it has expressly agreed to do. Until it has done so, it has not complied with its contract, though the building ad interim has been damaged by fire; the cost of restoration, in that event, being upon the contractor and not upon the Commonwealth. . . ."

The several provisions in the contract which provide that your department, through its engineer and inspector, shall have the right to inspect the work and to inspect the materials before their incorporation into the road, do not in

any way relieve the contractor of his responsibility. Such provisions, allowing an inspection, merely state what the owner would be allowed to do in the absence of any such clause in the contract: Rogue River Fruit and Produce Ass'n v. Gillen-Chambers Co., 85 Ore. 113, 165 Pac. 679 (1917). They are for the benefit of the Commonwealth. Their purpose is to allow the state to follow the work of the contractor. That this is so is clearly evidenced by sections thirty-seven and thirty-eight of the contract, which impose upon the contractor the obligation at any time to remove or replace defective work already completed. Furthermore, under section forty, above quoted, the contractor, in clear and unmistakable language, assumed sole responsibility for doing the work in accordance with the specifications and contract up until the time of final payment.

It is our opinion that the contractor in this case is solely responsible for remedying the defect in the highway caused by the presence of flux stone in violation of the specifications, even though that violation was not the result of any negligent act or bad faith on the part of the contractor, and though the material had been inspected and approved by your inspector.

Therefore, you are advised that you would not be warranted in certifying to the secretary of highways the completion of this contract until and unless the contractor remedies the defective work and completes his contract in accordance with the specifications and in a manner which meets with your approval.

From C. P. Addams, Harrisburg, Pa.